FILED20 JUN '11 13:39USDC-ORP

Dennis N. Balske
621 SW Morrison, Suite 1025
Portland, OR 97205
Telephone: (503) 222-9830
Facsimile: (503) 274-8575
Balske@Earthlink.net
OSB No. 931303

Attorney for Petitioner

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

| | |
|---|---|
| **Kipland Kinkel,**<br><br>**PETITIONER,**<br><br>**vs.**<br><br>**Gerald Long, Acting Superintendent, Oregon State Correctional Institution,**<br><br>**RESPONDENT.** | **CV'11-746 MA**<br><br>**PETITION UNDER 28 U.S.C. §2254 FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY** |

The nature of the crimes committed by the petitioner and the number of victims injured by them has generated wide publicity and justifiably highly emotional responses. For the benefit of those persons, petitioner wishes to make clear that by seeking relief here he does not seek to evade responsibility for his actions. His plea was and always will be guilty – but his claim here, as in his post-conviction action, is that he is guilty but insane and should be incarcerated at the state mental hospital rather than state prison.



#41078

1. (a) Name and location of court which entered the judgment of conviction you are challenging: Lane County Circuit Court.

   (b) Criminal docket or case number: Case No. 20-98-09574.

2. (a) Date of judgment of conviction: September 24, 1999.

   (b) Date of sentencing: November 2, 1999.

3. Length of sentence: 1,340 months.

4. Were you convicted on more than one count or of more than one crime? Yes.

5. Identify all crimes of which you were convicted and sentenced in this case: On each of the four murder convictions, the trial court imposed a 25-year prison term, run concurrently with one another, and a life term of post-prison supervision. On each of the 26 attempted aggravated murder convictions the court imposed a 90-month prison term and a three year term of post-prison supervision. The court ordered that 40 months of each of the 26 90-month prison terms run consecutive with each other and with the four concurrent 25-year terms on the murder convictions. The trial court thus imposed a total prison term of 1,340 months (25 years = 300 months, plus 26 X 40 = 1,040 months, or 111 years and 8 months).

6. (a) What was your plea? Guilty.

   (b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty to and what did you please not guilty to: N/A.

   (c) If you went to trial, what kind of trial did you have: N/A.

7. Did you testify at a pretrial hearing, trial or a post-trial hearing? Yes, by discovery deposition in post-conviction action.

8. Did you appeal from the judgment of conviction? Yes.

9. If you did appeal, answer the following:

   (a) Name of court: Oregon Court of Appeals.
   (b) Docket or Case number: unknown.
   (c) Result: affirmed in a written opinion.
   (d) Date of result: October 16, 2002.
   (e) Citation to the case: *State v. Kinkel*, 184 Or App 277, 56 P3d 463 (2002).
   (f) Grounds raised: N/A (none raised in this petition).

(g) Did you seek further review by a higher state court?
(1) Name of court: Oregon Supreme Court.
(2) Docket or case number: unknown.
(3) Result: conviction and sentences affirmed.
(4) Date of result: December 24, 2002 (judgment issued January 29, 2003).
(5) Citation to the case: *State v. Kinkel*, 335 Or 142, 61 P3d 938 (2002).
(6) Grounds raised: N/A.

(h) Did you file a petition for certiorari in the United States Supreme Court? No. If yes, answer the following: No.
(1) Docket or case number: N/A.
(2) Result: N/A.
(3) Date of result: N/A.
(4) Citation to the case: N/A

10. Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions concerning this judgment of conviction in any state court? Yes.

11. If your answer to 10 was "yes," give the following information:
(a) (1) Name of court: Marion County Circuit Court.
(2) Docket or case number: 03C-21079.
(3) Date of filing: December 18, 2003.
(4) Nature of the proceeding: Post-conviction proceeding
(5) Grounds raised:

A. Petitioner was denied effective assistance of trial counsel, who failed to meet the minimum constitutional standards for effective assistance of counsel, in violation of petitioner's rights under Article I, § 11 of the Oregon Constitution and the Sixth and Fourteenth Amendments to the United States Constitution in each of the following respects, among others to be proved at trial:

1. Petitioner's trial counsel failed to request that the trial court order a mental examination to determine petitioner's competency to stand trial, his ability to aid and assist in his own defense, and his fitness to proceed by reason of incapacity due to a mental disease or defect. Had such an examination been obtained, it would have revealed that petitioner was mentally incompetent to stand trial, mentally unable to aid and assist in his own defense, unfit to proceed by reason of incapacity due to a mental disease or defect, and mentally unable to knowingly, voluntarily and intelligently waive his constitutional rights. Effective trial counsel would have relied upon such examination and neither advised nor permitted petitioner to enter the guilty pleas which resulted in a 111 year prison sentence.

2. Petitioner's trial counsel failed to object to the trial court's acceptance of the guilty plea and the trial court's plea colloquy with petitioner, which did not adequately determine whether petitioner's mental condition affected his ability to knowingly, voluntarily and intelligently waive his constitutional rights. Had trial counsel made such an objection, the trial court would have conducted a more extensive plea colloquy, which would have revealed that petitioner was suffering from paranoid schizophrenia, auditory hallucinations, and impaired neurologic function, such that the trial court would not have accepted petitioner's guilty plea, and if the trial court had nonetheless accepted the plea, appellate counsel could have raised the trial court's acceptance of the plea on direct appeal.

3. Petitioner's trial counsel failed to object to the trial court's acceptance of petitioner's plea without the knowing, voluntary and intelligent consent and waiver, in writing and on the record, by petitioner's guardian ad litem, Claudia Jurowski. Had trial counsel made such an objection, the guardian *ad litem* would not have consented to the plea agreement, the trial court would not have accepted petitioner's plea, and if the trial court had nonetheless accepted the plea, appellate counsel could have raised the trial court's acceptance of the plea on direct appeal.

4. Petitioner's trial counsel advised petitioner to accept a plea agreement in which petitioner gave up a substantial mental defense without receiving adequate consideration. Had trial counsel not advised petitioner to plead guilty, he would not have pled guilty.

B. Petitioner was denied effective assistance of appellate counsel, who failed to meet the minimum constitutional standards for effective assistance of counsel, in violation of petitioner's rights under Article I, § 11 of the Oregon Constitution and the Sixth and Fourteenth Amendments to the United States Constitution in each of the following respects, among others to be proved at trial:

1. Petitioner's appellate counsel failed to raise as an error on appeal the trial court's failure to order a mental examination of petitioner, who was incompetent to stand trial, unable to aid and assist in his own defense, unfit to proceed by reason of incapacity due to a mental disease or defect, unable to knowingly, voluntarily, and intelligently waive his constitutional rights, unable to understand the nature of the proceedings, unable to assist and cooperate with counsel, and unable to participate in his defense. Had appellate counsel raised such issues, the appellate courts would have reversed petitioner's conviction.

2. Petitioner's appellate counsel failed to raise as an error on appeal the trial court's erroneous acceptance of the guilty plea and the trial court's insufficient plea colloquy with petitioner, which did not adequately determine whether petitioner's mental condition affected his ability to knowingly, voluntarily and intelligently waive his constitutional rights. Had appellate counsel raised such issues, the appellate courts would have reversed petitioner's conviction.

3. Petitioner's appellate counsel failed to raise as an error on appeal the trial court's acceptance of petitioner's plea without the knowing, voluntary and intelligent consent and waiver, in writing and on the record, by petitioner's guardian ad litem, Claudia Jurowski. Had appellate counsel raised this issue, the appellate courts would have reversed petitioner's conviction.

C. The trial court's failure to order a mental examination of petitioner, who was incompetent to stand trial, unable to aid and assist in his own defense, unfit to proceed by reason of incapacity due to a mental disease or defect, unable to knowingly, voluntarily, and intelligently waive his constitutional rights, unable to understand the nature of the proceedings, unable to assist and cooperate with counsel, and unable to participate in his defense, was a substantial denial in the proceedings resulting in petitioner's conviction in violation of petitioner's right to trial by jury, his right to confront his accusers, his right against compulsory self-incrimination, his right to counsel, and his right to due process of law, under Article I, §§ 11 and 12 of the Oregon Constitution and the Fifth, Sixth and Fourteenth Amendments to the United States Constitution. Had the trial court ordered a mental examination of petitioner, the examination would have revealed that petitioner was incompetent to stand trial, unable to aid and assist in his own defense, unfit to proceed by reason of incapacity due to a mental disease or defect, unable to knowingly, voluntarily, and intelligently waive his constitutional rights, unable to understand the nature of the proceedings, unable to assist and cooperate with counsel, and unable to participate in his defense. Had the trial court ordered a mental examination, the trial court would not have accepted petitioner's guilty plea.

D. The trial court's acceptance of petitioner's guilty plea, when petitioner was incompetent to stand trial, unable to aid and assist in his own defense, unfit to proceed by reason of incapacity due to a mental disease or defect, unable to knowingly, voluntarily, and intelligently waive his constitutional rights, unable to understand the nature of the proceedings, unable to assist and cooperate with counsel, and unable to participate in his defense was a substantial denial in the proceedings directly resulting in petitioner's conviction in violation of petitioner's right to trial by jury, his right to confront his accusers, his right against compulsory self-incrimination, his right to counsel, and his right to due process of law, under Article I, §§ 11 and 12 of the Oregon Constitution and the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

E. The trial court's plea colloquy, which directly resulted in petitioner's conviction, did not adequately determine whether petitioner's mental condition affected his ability to knowingly, voluntarily and intelligently waive his constitutional rights, and was a substantial denial in the proceedings in violation of petitioner's right to trial by jury, his right to confront his accusers, his right against compulsory self-incrimination, his right to counsel, and his right to due process of law, under Article I, §§ 11 and 12 of the Oregon Constitution and the Fifth, Sixth and Fourteenth

Amendments to the United States Constitution.

F. The trial court's acceptance of petitioner's guilty plea without first obtaining a knowing, voluntary, and intelligent waiver from the person whom the court had appointed as petitioner's guardian *ad litem* for this case, Claudia Jurowski, was a substantial denial in the proceedings resulting in petitioner's conviction in violation of petitioner's right to trial by jury, his right to confront his accusers, his right against compulsory self-incrimination, his right to counsel, and his right to due process of law, under Article I, §§ 11 and 12 of the Oregon Constitution and the Fifth, Sixth and Fourteenth Amendments to the United States Constitution. Had the trial court asked for the guardian *ad litem's* waiver before taking the plea, she would not have given it.

(6) Did you receive a hearing where evidence was given on your motion, petition, or application? Yes.
(7) Result: petition denied.
(8) Date of result (if you know): Judgment was entered on January 2, 2008.

(b) If you filed any second motion, petition, or application, give the same information: N/A.

(c) If you filed any third petition, application, or motion, provide the same information: N/A

(d) For each petition, did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion? Yes.

(e) If you did not appeal to the highest state court having jurisdiction, please explain why you did not: N/A

12. State concisely every ground on which you claim that you are being held unlawfully. Summarize briefly the facts supporting each ground. If necessary, you may attach pages stating additional grounds and facts supporting the same.

<u>Ground One</u>: **During the petitioner's post-conviction appeal, the Oregon appellate courts deprived the petitioner of due process of law when they failed to apply the statutorily required standard of review but instead applied one that was more favorable to the state.**

(a) Supporting Facts: The Oregon Court of Appeals applied an "any evidence" standard of appellate review. Application of this standard of review was contrary to the standard of review required by Or. Rev. Stat. 138.650. That standard, described by the Oregon Supreme Court in *Ball v. Gladden*, 250 Or. 485, 487, 443 P.2d 621 (1968) and *Moen v. Peterson*, 312 Or. 503, 511, 824 P.2d 404 (1991), provides that the court reviews the record to determine whether the post-conviction court's findings are "supported by the evidence."

The Court of Appeals upheld the PCR trial court's finding that trial counsel "had *no indications whatsoever* that petitioner was unable to aid and assist them and fully participate in the entry of his guilty pleas," by citing one piece of evidence –

trial counsel's self-serving denial that they had any indication of their client's incompetence – but refusing to take into account substantial evidence to the contrary. *See* Ground Two at paragraphs (a)(1)-(5), *infra*, for a description of this evidence. It held that "even if petitioner were correct about [the PCR court's error in finding "no indications whatsoever"], the fact that the court's factual finding was contradicted by other evidence in the record is beside the point," because "[t]he determinative question on an appeal from a judgment dismissing a petition for post-conviction relief is whether there is *any* evidence in the record that supports the court's finding. *Pratt*, 201 Or. App at 220." Slip op at 11 (emphasis in original).

The Court of Appeals similarly used this "any evidence" standard to reject petitioner's contention that the evidence established that his plea was not voluntarily entered. It stated: "In reviewing a post-conviction court's determination that a plea was knowing and voluntary, we are bound by the court's findings of fact if there is *any* evidence in the record to support them . . . ." *Id.* at 12 (emphasis added). It then ruled: "Again, however, as in petitioner's first assignment of error, petitioner's contentions founder against our standard of review." *Id.* at 13.

The opinion of the Court of Appeals derived the "any evidence" standard from *Pratt v. Armenakis*, 201 Or. App. 217, 220, 118 P.3d 821 (2005).[1] The *Pratt* decision was the result of rancorous post-conviction litigation in an aggravated murder case. In response to that petitioner's vigorous complaints, the Oregon Court of Appeals stated: "What petitioner fails to appreciate in his petition for reconsideration is that our review is limited to determining whether there is *any* evidence in the record to support the post-conviction court's findings. *Ball v. Gladden*, 250 Or. 485, 443 P.2d 621 (1968)." 201 Or. App. at 220 (emphasis in original).

Significantly, while the *Pratt* opinion emphasized the word *"any"* in the term "*any* evidence," it failed to cite a specific page in *Ball* using that word or concept. *Id.* In fact, the word "any" does not even appear in *Ball*, which holds: "[w]hat actually transpired is a question of fact for the trial court or jury. If the evidence sustains such historical factual findings they will not be disturbed by this court." *Ball* then analyzed the historical facts "to see if they are sufficient to justify the trial court's finding of voluntariness." 255 Or. at 488.

Twenty-three years after *Ball,* the Oregon Supreme Court used essentially the same standard in *Moen v. Peterson*, 312 Or. 503, 511 (1991), in reviewing a post-conviction court's findings pursuant to Or. Rev. Stat. 138.650. *Moen* held that the

---

[1] Interestingly, the state did not suggest the "any evidence" standard in its Court of Appeals' brief: "[t]he issues for the reviewing court are whether the facts found by the post-conviction court are supported by the record," and "[t]his court is bound by the factual findings of the post-conviction court if there is evidence in the record to support them." State's Br. at 7.

Court of Appeals must determine whether the findings are "supported by the evidence." 312 Or. at 511. *Moen* pointed out that "[t]he inquiry whether a finding is supported by the evidence is a question of law, properly within the Court of Appeals' scope of review." 312 Or. at 511.

(b) If you did not exhaust your state remedies on Ground One, please explain why: The first court to apply the erroneous standard of review was the Oregon Court of Appeals. Petitioner then sought review by the Oregon Supreme Court on three grounds. One of those grounds was the Court of Appeals' application of the incorrect standard of review. But the Oregon Supreme Court denied review, leaving this court in a position to address the question whether the actions of the Oregon appellate courts violated due process when they upheld the post-conviction trial court's ruling.

(c) Direct Appeal of Ground One:
(1) If you appealed from the judgment of conviction, did you raise this issue? N/A
(2) If you did not raise this issue in your direct appeal, please explain why: the federal due process violation had not yet occurred.

(d) Post-conviction proceedings:
(1) Did you raise this issue through a post-conviction motion or petition for writ of habeas corpus in a state trial court? No, because it had not yet occurred.
(2) If yes,
Type of motion: N/A.
Name and location of the court where the petition or motion was filed: N/A.
Docket or case number (if you know): N/A.
Date of court's decision: N/A.
Result: (attach a copy of the opinion or order, if available): N/A.
(3) Did you receive a hearing on your motion or petition? N/A.
(4) Did you appeal from the denial of your motion or petition? N/A.
(5) If yes, did you raise this issue in your appeal? N/A.
(6) If yes,
Name and location of the court where the appeal was filed: N/A.
Docket or case number (if you know): N/A.
Date of the court's decision: N/A.
Result: (attach a copy of the opinion or order, if available): N/A.
(7) If your answer is no, explain why you did not raise this issue: See answer contained in paragraph 1.

(e) Other remedies: Describe any other state remedies that you have used to exhaust ground one: N/A.

**Ground Two: Trial counsel provided ineffective assistance, in violation of the Sixth Amendment. They failed to consult their experts, to request a competency hearing, or to inform the trial court of their client's deteriorating mental health, after they learned that their seriously mentally ill client's mental health had seriously deteriorated when he was removed from his powerful antipsychotic medications, but before they proceeded with the petitioner's guilty plea.**

(a) Supporting Facts: Kip Kinkel is a paranoid schizophrenic. He suffers delusions and auditory hallucinations. His most prominent delusion is that the government planted a computer chip in his brain. He believes the chip is connected to two satellites: one controls him by transmitting three distinct voices into his head; the other observes all his actions. His paranoia causes him, *inter alia*, to fear people with cameras, particularly people wearing eyeglasses, who he believes are photographing him through cameras concealed in their glasses.

He also receives command hallucinations. These hallucinations are extremely upsetting. *Id.* He has tried to escape from them. He found in some cases that the only way to escape the hallucinatory voices was to do what they commanded him to do.

The petitioner asserted that his trial counsel were ineffective for failing to request that the trial court conduct a mental competency inquiry. Trial counsel possessed a great deal of evidence raising a substantial doubt about petitioner's mental competence. They believed their client's severe mental illness provided the most compelling mental defense they had ever seen. They knew he had been off his very strong antipsychotic medication for several months right up to the time of his guilty plea, knew he was getting worse and worse, knew he would only be able to make it through a trial if he was heavily medicated, and knew their main mental health experts for trial had not seen their client during the several months he was off of his medication. Yet trial counsel did not even take one simple step –consulting one of their experts, obtaining a competency evaluation, or simply telling the trial court what they knew – to ensure that the plea would be voluntary.

The evidence known to petitioner's trial counsel that would have raised a substantial doubt about petitioner's competence to any adequate and effective defense lawyer included:

1. Jail treatment records from trial counsel's file, which they received before the guilty plea, showing that petitioner was having hallucinations and begging to restart his antipsychotic medications.

2. Dr. James McDonald's private treatment records from counsel's file, sent to counsel just days before the plea, confirmed the mental deterioration revealed by the jail treatment records.

3. Dr. McDonald's affidavit, admitted as his PCR trial testimony, showing that petitioner was doing very badly in the period before the guilty plea: his "mental state was compromised in the four months leading up to his guilty plea;" and "as Kip got closer to the plea agreement and his anxieties increased, the probability is that his psychosis increased and his capacity dropped." Dr. McDonald's affidavit disclosed that he conferred regularly with trial counsel about how petitioner was doing, and that in all likelihood would have done so around the time of the guilty plea.

4. Less than 30 days before the plea, the defense investigator told trial counsel that petitioner "was much worse ... so agitated that he would pace, hit one wall, turn, pace to the next wall, hit it, etc. He was in anguish and it was disconcerting to me." In response, counsel "acknowledged that he had seen Kip in this state, as well."

5. Months before the plea, the state's premier child psychologist who had evaluated petitioner, Dr. Orin Bolstad, told trial counsel that petitioner would need "a large amount of antipsychotic medication before he went into the courtroom."[2] Yet, trial counsel failed to consult Dr. Bolstad about whether petitioner was capable of entering a voluntary plea without his powerful antipsychotic medication.[3]

Despite being confronted with this substantial evidence – obvious indications to trial counsel that petitioner's serious mental illness was worsening in the days before entry of his guilty plea – the PCR trial court found that counsel had "no indications whatsoever" of incompetence:

> 33. Trial counsel had *no indications whatsoever* that petitioner was unable to aid and assist them and fully participate in the entry of his guilty pleas. If either attorney had seen any evidence whatsoever pointing to petitioner's inability to proceed, they would have conducted a competency evaluation on their own or asked the court to order one.

Slip op. at 9 (emphasis added).

The Court of Appeals rejected the petitioner's attack on this finding: "even if petitioner were correct about that, the fact that the court's factual finding was contradicted by other evidence in the record is beside the point," because "[t]he determinative question on an appeal from a judgment dismissing a petition for post-

---

[2] Similarly, Dr. McDonald informed counsel that, with "the medications [petitioner] was on he was able to control the voices."

[3] Petitioner re-started his medication only a few days before his plea. Undisputed expert testimony established that it takes at least two weeks "before [the antipsychotic medications] have an impact."

conviction relief is whether there is *any* evidence in the record that supports the court's finding. *Pratt*, 201 Or. App. at 220." *Id.* at 11 (emphasis in original).

(b) If you did not exhaust your state remedies on Ground Two, please explain why: N/A.

(c) Direct Appeal of Ground Two:
(1) If you appealed from the judgment of conviction, did you raise this issue? No.
(2) If you did not raise this issue in your direct appeal, please explain why: In Oregon, this issue must be raised in post-conviction proceedings.

(d) Post-conviction proceedings:
(1) Did you raise this issue through a post-conviction motion or petition for writ of habeas corpus in a state trial court? Yes.
(2) If yes,
Type of motion: post-conviction petition.
Name and location of the court where the petition or motion was filed: Marion County Circuit Court.
Docket or case number (if you know): 03C-21079.
Date of court's decision: Judgment was entered on January 2, 2008.
Result: petition denied (copy of the Findings of Fact and Conclusions of Law attached):
(3) Did you receive a hearing on your motion or petition? Yes.
(4) Did you appeal from the denial of your motion or petition? Yes.
(5) If yes, did you raise this issue in your appeal? Yes.
(6) If yes,
Name and location of the court where the appeal was filed: Oregon Court of Appeals.
Docket or case number (if you know): CA A137866.
Date of the court's decision: January 12, 2011.
Result: denial of petition affirmed (opinion attached).
(7) If your answer is no, explain why you did not raise this issue: N/A.

(e) Other remedies: Describe any other state remedies that you have used to exhaust ground two: N/A.

**<u>Ground Three</u>: The petitioner's plea was not voluntarily entered, in violation of the due process clause of the Fourteenth Amendment.**

(a) Supporting Facts: The petitioner contended that his serious paranoid schizophrenia, combined with the lack of antipsychotic medication for a prolonged period, left him incapable of making "a reasoned choice among the alternatives presented to him." Renowned OHSU child psychiatrist, Dr. William Sack, opined

that petitioner did not enter his plea voluntarily. The State presented no testimony to the contrary.

Dr. Sack explained that petitioner's paranoia compelled him to hide his illness, so much so that he was unwilling to consider any sentence that would require him to be committed to a mental hospital. "He was terrified of being labeled mentally ill" because others would discover that he was "nuts."

> He was not going to the state hospital. Nobody was going to see that he was nuts.
>
> ***
>
> He didn't have the capacity to do that [make a reasoned plea choice] because of his mental illness, because of the secrecy, because of his attitude toward mental illness and being frightened of being in a state hospital.

Dr. Bolstad agreed. He explained that petitioner did not understand his disease then and did not want anybody to see him as mentally ill and did not want to be so labeled. Petitioner thought mental illness was like mental retardation and "certainly wanted to avoid being acknowledged for that."

Dr. Bolstad explained a second reason why petitioner would never willingly go to trial – his mental illness caused a tremendous fear of going to court.

> . . . the real motivator – the real reason why he was willing to accept these terms and agree that he understood all of these things was simply because of his mental illness. . . . he had an irrational fear of going to court. . . . he had tremendous fear of court causing his voices to escalate. . . . he had tremendous fear of the DA's office and the conspiracies he saw taking place. He had tremendous fear of people misrepresenting him and saying inaccurate things about him. And I would say the way he responded to all those things were irrational. It was part and parcel of his mental illness.
>
> ***
>
> . . . his mission in life at that time was to avoid going to court.
>
> ***
>
> . . . first and foremost he had great fear of the voices coming on very strongly to him. This is a fear that was extremely consistent throughout his history of having a mental illness. He had tremendous fear of the voices ganging up on him. So much so that – I think a large part of the reason why he killed his parents was to get the voices to leave him alone. That's a pretty strong fear of voices, and I think he wanted to avoid that at all costs.

The State's expert psychologist, Dr. Johnson, agreed "that Kip does hear hallucinations – auditory hallucinations," acknowledged that hearing the hallucinatory voices for Kip "is painful and torturous and very difficult," and agreed that "[Kip] hates going to court".

At his attorneys' direction, the petitioner stopped taking his antipsychotic medication on July 2, 1999. By July 21, he was reporting that the auditory hallucinations had returned, even though his attorneys had instructed him not to discuss them. He continued to report them throughout August. By September 8, 1999, just 15 days before he accepted the plea offer, he "experienced active hallucinations during evaluation." By September 21, two days before he accepted the plea offer, he was curled in a ball having difficulty breathing following a panic attack and reporting the "voices."

The petitioner's numerous mental health experts were unaware of the petitioner's deterioration. They had not seen the petitioner for many months. They believed the case was going to trial and that, consistent with Dr. Bolstad's advice, the petitioner would be heavily medicated to enable him to withstand the pressure from the voices. They were not consulted regarding the petitioner's ability to decide on a complex plea offer, particularly at this point in time, when the voices inside his head were raging because he had been without his antipsychotic medication for a lengthy period.

Because trial counsel failed to consult their experts regarding whether petitioner was capable of making a voluntary plea decision without the benefit of his powerful medications, neither defense counsel nor the trial court learned that the petitioner's mental illness, without the benefit of medication, would not allow him to consider a trial, both because it would require him to endure the pounding voices, and because, if successful, it would require him to go to a mental hospital where his mental illness would be revealed. They did not learn that his mental illness would compel him to always choose to plead guilty to avoid a trial and to avoid hospitalization, and that therefore, he could not make a "reasoned choice" without his medication.

The petitioner's plea colloquy consisted of one-word "yes" answers to the trial court's multitude of leading questions. There was one exception. That exception occurred when the court asked whether petitioner's mind was clear and whether he was under the influence of any drugs that would affect him. Before the petitioner could answer, his counsel interjected and informed the court that "the record should be clear that [the petitioner] has recently taken the prescription medications Zyprexa, which is an antipsychotic, and Ativan, which is a tranquilizer." Counsel then told the court that counsel had "discussed that with [petitioner]," and "[i]t does not affect his ability to reason, his ability to understand the proceedings that are before the court." *Id.*

Thus, the one time when the topic of clear mindedness and medication was addressed, counsel stepped in and answered for the petitioner. Counsel did not advise

the court that: the medication, which made petitioner's mind clearer, had been discontinued for months; petitioner's mental illness had worsened during this period, including the return of active hallucinations; or, while restarted a few days before, the antipsychotic medication had not taken effect at the time of the plea.[4]

(b) If you did not exhaust your state remedies on Ground Three, please explain why: N/A.

(c) Direct Appeal of Ground Three:

(1) If you appealed from the judgment of conviction, did you raise this issue? No.

(2) If you did not raise this issue in your direct appeal, please explain why: Oregon law required that this issue be raised by post-conviction litigation.

(d) Post-conviction proceedings:

(1) Did you raise this issue through a post-conviction motion or petition for writ of habeas corpus in a state trial court? Yes.

(2) If yes,

Type of motion: Post-conviction petition.

Name and location of the court where the petition or motion was filed: Marion County Circuit Court.

Docket or case number (if you know): 03C-21079.

Date of court's decision: Judgment was entered on January 2, 2008.

Result: (attach a copy of the opinion or order, if available): denial of petition.

(3) Did you receive a hearing on your motion or petition? Yes.

(4) Did you appeal from the denial of your motion or petition? Yes.

(5) If yes, did you raise this issue in your appeal? Yes.

(6) If yes,

Name and location of the court where the appeal was filed: Oregon Court of Appeals.

Docket or case number (if you know): CA A137866

Date of the court's decision: January 12, 2011.

Result: (opinion attached).

(7) If your answer is no, explain why you did not raise this issue: N/A.

(e) Other remedies: Describe any other state remedies that you have used to exhaust ground three: none.

---

[4] Attorney Sabbitt did not even ask petitioner if he was hearing voices for "weeks before he entered his plea," including the time when he presented the plea offer to petitioner and when petitioner entered his guilty plea. In fact, he did not even observe petitioner's demeanor during the plea hearing, because, in counsel's words, "it's time to close it."

13. Please answer these additional questions about the petition you are filing:

(a) Have all grounds for relief that you have raised in this petition been presented to the highest state court having jurisdiction? No.

If your answer is "No," state which grounds have not been so presented and give your reason(s) for not presenting them: Ground one. There was no opportunity to present it. The violation itself occurred during the post-conviction appeal, when the Oregon appellate courts failed to apply the standard of review required by the state post-conviction statute.

(b) Is there any ground in this petition that has not been presented in some state or federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them: Same answer as in "(a)" above.

14. Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction that you challenge in this petition? No. If so, which ground or grounds have not been presented, and state your reasons for not presenting them: N/A. If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, the issues raised, the date of the court's decision, and the result for each petition, application, or motion filed. Attach a copy of any court opinion or order, if available.

15. Do you have any petition or appeal now pending in any court, either state or federal, for the judgment you are challenging? No. If yes, state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised: N/A.

16. Give the name and address, if you know, of each attorney who represented you in the following states of the judgment you are challenging:

(a) At preliminary hearing: N/A.

(b) At arraignment and plea: Mark Sabbitt, 747 Willamette St. Eugene, OR 97401, and Richard Mullen, 72-A Centennial Loop, Ste. 140, Eugene, OR 97401.

(c) At trial: same.

(d) At sentencing: same.

(e) On appeal: Jesse Barton, P.O. Box 5545, Salem, OR 97304.

(f) In any post-conviction proceeding: Dennis Balske and Lawrence Matasar, 621 SW Morrison, Suite 1025, Portland, Oregon 97205.

(g) On appeal from adverse ruling in a post-conviction proceeding: same as in f.

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging? No.

18. Timeliness of the petition: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations does not bar your petition: N/A.

WHEREFORE, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding.

Dennis N. Balske
Attorney for Kipland Kinkel